UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRSTMERIT BANK, N.A., successor in interest to the FDIC, Receiver for Midwest Bank and Trust Company, | )<br>)<br>) 12 C 10051 |
| Plaintiff, | )<br>) Judge Feinerman |
| vs. | )<br>) |
| QUANSTROM-ROSE L.L.C., MONEE 105, LLC, BAILLY RIDGE LLC, W&L CORNER LLC, MICHAEL H. ROSE, not personally but solely as Trustee of the Michael H. Rose and Timothy A. Rose Trust Agreement No. 4869 dated August 1, 1993, MICHAEL H. ROSE, and TIMOTHY A. ROSE, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**M**EMORANDUM **O**PINION AND **O**RDER

In this diversity suit, FirstMerit Bank, N.A., alleges breach of a promissory note and seeks to foreclose on five mortgages securing the note. Doc. 1. Defendants answered and asserted affirmative defenses invoking the unclean hands doctrine. Docs. 25-29. FirstMerit has moved under Federal Rule of Civil Procedure 12(f) to strike the unclean hands affirmative defenses. Doc. 33. The motion is granted.

**Background**

On or about September 1, 2009, Midwest Bank and Trust Company extended a loan ("Loan") to Defendants Quanstrom-Rose and Monee (together, "Borrowers") in the amount of $9,359,825 pursuant to a Loan Agreement. Doc. 1 at ¶ 11; Doc. 1-1 at 1, 3; Doc. 25 at p. 6, ¶ 11. (Defendants' answers and affirmative defenses are materially identical, so for ease of exposition only the Borrowers' pleading, Doc. 25, will be cited.) The Loan's maturity date was September 5, 2011. Doc. 1-1 at 4. Defendants Quanstrom-Rose, Monee, Bailly Ridge, and W&L each

executed a Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing on four separate properties as security for the Loan. Doc. 1 at ¶¶ 13-16; Docs. 1-3, 1-4, 1-5, 1-6. On or about May 7, 2010, Midwest and the Borrowers executed a First Amendment to Loan Agreement and Reaffirmation of Guaranty, Doc. 1-8, pursuant to which the Michael H. Rose and Timothy A. Rose Trust executed a Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing (together with the other four mortgage agreements, "Mortgages") on a fifth property as additional security for the Loan, Doc. 1-7. Doc. 1 at ¶¶ 17-18.

On May 14, 2010, Midwest was closed by the Illinois Department of Financial Professional Regulation, and the Federal Deposit Insurance Company ("FDIC") was named Midwest's receiver. Doc. 25 at p. 30, ¶ 2. FirstMerit acquired from the FDIC all of Midwest's assets, including the Loan and Mortgages, and also entered into a Loss-Share Agreement with the FDIC. *Id*. at p. 30, ¶¶ 3-4. Such agreements generally provide that the FDIC will reimburse a bank (like First Merit) acquiring a failed bank's assets for the majority of the difference between the non-discounted value of the failed bank's loan portfolio and the value actually collected by the acquiring bank. *Id*. at p. 30, ¶ 5. The Loan is subject to the Loss-Share Agreement. *Id*. at p. 31, ¶ 6. The Loss-Share Agreement is of a limited duration, and after its expiration, the FDIC will not reimburse FirstMerit for any portion of losses incurred in connection with the Loan. *Id*. at p. 31, ¶ 7.

On or about October 5, 2010, FirstMerit and the Borrowers executed: (1) a Second Amendment to Loan Agreement and Reaffirmation of Guaranty that extended the Loan's maturity date to October 5, 2011, Doc. 1-10 at 2; and (2) an Amended and Restated Promissory Note ("Note") restating the Borrowers' agreement to pay to FirstMerit, as successor in interest to Midwest, the principal sum of the Loan by the amended maturity date, Doc. 1-2 at 1. Doc. 1 at

¶ 20.  On or about July 1, 2011, FirstMerit and the Borrowers executed a Third Amendment to Loan Agreement and Reaffirmation of Guaranty that extended the maturity date to October 31, 2012.  *Id.* at ¶ 21; Doc 1-11 at 2.  The Borrowers also executed an Allonge to Amended and Restated Promissory Note that, among other things, required that the Borrowers make mandatory principal prepayments under the Note on or before September 21, 2012 ("Mandatory Prepayments").  Doc. 1 at ¶ 22; Doc. 25 at pp. 12-13, ¶ 22.  The Borrowers did not make the Mandatory Prepayments, Doc. 25 at pp. 13, ¶ 23, and the Loan matured on October 31, 2012.  Doc. 1 at ¶ 23; Doc. 1-11 at 2.

Defendants' laches affirmative defense alleges that FirstMerit treats the Loan and FirstMerit's other loss-share loans less favorably than non-loss share loans in its portfolio in order to take advantage of the "substantial economic benefits of the Loss-Share."  Doc. 25 at p. 31, ¶ 8.  Specifically, Defendants allege that FirstMerit (a) subjects loss-share loans to different appraisal and/or valuation criteria to depress the value of the property securing loss-share loans and thus to maximize recovery from the FDIC, (b) evaluates loss-share loans under "more stringent criteria" when considering whether to renew, modify, renegotiate, or enter into workouts, making those loans more likely to default and thus to trigger coverage from the FDIC, and (c) requires loss-share loan borrowers to pay down more principal than borrowers of other loans, "with knowledge (not shared with Loss-Share borrowers) that FirstMerit would likely refuse to renew the Loss-Share loans" or otherwise precipitate defaults.  *Ibid.*  Defendants further allege that the Loan was entitled to non-discriminatory treatment and fair dealing from FirstMerit, and that FirstMerit engaged in "misconduct or bad faith … because it treated [the Loan] in [a] discriminatory fashion."  *Id.* at pp. 31-32, ¶¶ 9, 11.

**Discussion**

Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "By its terms, Rule 12(f) gives unrestricted authority to the district court to strike 'insufficient' defenses." *United States v. 416.81 Acres of Land*, 514 F.2d 627, 630 n.3 (7th Cir. 1975); *see also Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Affirmative defenses will be stricken "only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The legal and factual sufficiency of an affirmative defense is examined with reference to state law. *See Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991). The Loan Agreement and Note provide that they shall be governed by Illinois law. Doc. 1-1 at 30; Doc. 1-2 at 8. Defendants have not argued that First Merit's motion to strike was untimely under Rule 12(f)(2), thereby forfeiting the point. *See G&S Holdings LLC v. Cont'l Casualty Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted).

"The unclean hands doctrine provides that a party to a lawsuit may not obtain the relief it seeks if it has engaged in wrongful conduct." *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002) (Illinois law); *see also Long v. Kemper Life Ins. Co.*, 553 N.E.2d 439, 441 (Ill. App. 1990). "The bad conduct constituting unclean hands must involve fraud, unconscionability or bad faith toward the party proceeded against, and must pertain to the subject matter involved and affect the equitable relations between the litigants." *Int'l Union, Allied Indus. Workers of Am., AFL-CIO v. Local Union 589, Allied Indus. Workers of Am., AFL-CIO*, 693 F.2d 666, 672 (7th Cir. 1982)

(internal quotation marks and citations omitted); *see also State Bank of Geneva v. Sorenson*, 521 N.E.2d 587, 591 (Ill. App. 1988) (discussing the unclean hands defense in the foreclosure context, and holding that "equitable relief may be denied if the party seeking that relief is guilty of misconduct, fraud, or bad faith toward the party against whom relief is sought, and further provided that the misconduct, fraud, or bad faith is in connection with the transaction under consideration").

FirstMerit argues that the unclean hands defense is not available in actions at law, and therefore that the defense cannot possibly apply to its breach of promissory note claim. Doc. 34 at 7. This argument ignores Seventh Circuit precedent holding that unclean hands may be asserted as a defense to legal and equitable claims alike. *See Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985) ("Today, 'unclean hands' really just means that in equity as in law the plaintiff's fault, like the defendant's, may be relevant to the question of what if any remedy the plaintiff is entitled to."); *Maltz v. Sax*, 134 F.2d 2, 5 (7th Cir. 1943) ("As to unclean hands: The maxims of equity are available as defenses in actions at law.") (citations omitted). Even if the distinction between legal and equitable claims has survived for purposes of the unclean hands defense—and the Appellate Court of Illinois as recently as last year held that it has, *see Palmer v. Heartland Ill. Food Corp.*, 2012 IL App (3d) 110222-U, at ¶ 47, 2012 WL 7005847, at *9 (Ill. App. Aug. 29, 2012)—the court would consider Defendants' affirmative defense to the breach of promissory note claim to invoke the *in pari delicto* doctrine, which is equivalent in all pertinent respects to unclean hands and which indisputably applies to actions at law. *See Schlueter v. Latek*, 683 F.3d 350, 355 (7th Cir. 2012) ("When as in such cases the plaintiff is asking for equitable relief, the *in pari delicto* defense is referred to as the unclean-hands defense. But the label doesn't matter, and the defenses were equated in *McKennon v. Nashville Banner*

5

*Publishing Co.*, 513 U.S. 352, 360-61 (1995).") (citation omitted); *Pieczynzki v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989) ("To that extent … there is a defense of 'unclean hands' (if equitable relief is sought) or '*in pari delicto*' (if legal relief is sought).").

Defendants' unclean hands defense nonetheless fails as a matter of law on other grounds. Defendants admit that they failed to make the Mandatory Prepayments, Doc. 25 at p. 13, ¶ 24, and the Loan indisputably has matured, Doc. 1-11 at 2; Doc. 25 at p. 12, ¶ 21. Nothing in the parties' contracts required FirstMerit to relax the Loan's terms in any way. Under these circumstances, a lender does not commit misconduct or act fraudulently or in bad faith, thus subjecting itself to an unclean hands defense, merely by enforcing a loan or declining to renew a loan that has come due. In *Northern Trust Co. v. VIII South Michigan Associates*, 657 N.E.2d 1095 (Ill. App. 1995), as in this case, a lender brought a foreclosure suit and was met with an unclean hands defense. The trial court dismissed the defense, and the Appellate Court of Illinois affirmed, explaining as follows:

> The loan agreements in this case stated that Northern [the bank] would loan to VIII South $11.8 million. The Guarantors admit that this entire amount was disbursed to VIII South. … Northern fulfilled its obligations under the loan agreement and there is no showing that it committed any wrong in failing to reveal its internal decision making process or its classification of the loan as troubled. Northern had no obligation to renew the loan. The Guarantors have alleged no facts showing that Northern acted in bad faith in enforcing the terms of the loan.

*Id*. at 1104-05; *see also Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990) ("Firms that have negotiated contracts are entitled to enforce them to the letter … without being mulcted for lack of 'good faith.'").

The same result is warranted here. *See Guar. Fed. Sav. & Loan Ass'n v. Am. Nat'l Bank & Trust Co. of Chi.*, 509 N.E.2d 1313, 1322 (Ill. App. 1987) (holding that where the bank "merely granted a loan to the defendants, which it was authorized to do, [and] did not engage in

any illegal or improper activity," it "was not guilty of unclean hands and was entitled to enforce the loan"). This is particularly so given the fact, acknowledged by Defendants, that the bank had already "extended and renegotiated the … Loan *twice*." Doc. 37 at 8; Doc. 25 at pp. 11-12, ¶¶ 20-21. It is inconceivable that FirstMerit's hands could be deemed unclean because it did not extend and renegotiate the Loan a *third* time. *See Market St. Assocs. L.P. v. Frey*, 941 F.2d 588, 594 (7th Cir. 1991) ("even after you have signed a contract, you are not obliged to become an altruist toward the other party and relax the terms if he gets into trouble in performing his side of the bargain"); *Kham & Nate's Shoes No. 2*, 908 F.2d at 1358 ("Although Bank's decision left Debtor scratching for other sources of credit, Bank did not create Debtor's need for funds, and it was not contractually obliged to satisfy its customer's desires. The Bank was entitled to advance its own interests, and it did not need to put the interests of Debtor and Debtor's other creditors first. … First Bank of Whiting is not an eleemosynary institution. It need not throw good money after bad, even if other persons would catch the lucre."); *Bank of Smithtown v. 264 W. 124 LLC*, 105 A.D.3d 468, 469 (N.Y. App. Div. 2013) (finding no unclean hands in a foreclosure action where the lender "was under no obligation to modify the loan" and where "there [was] nothing immoral or unconscionable about its decision to proceed with foreclosure").

Defendants attempt to distinguish *Northern Trust* on the ground that it "did not involve an unclean hands defense based on a loss-share agreement." Doc. 37 at 9. That is, Defendants contend that FirstMerit has unclean hands not simply because it enforced rather than renegotiated the Loan Agreement and Note, but because it treated the Loan less favorably because it was a loss-share loan—in other words, that FirstMerit improperly discriminates against loss-share loans when it comes to renewals and modifications due to economic incentives created by its Loss-Share Agreement with the FDIC. Doc. 25 at p. 31, ¶ 8.

Defendants offer, and the court could find, no authority for the proposition that a bank or any other party acquires unclean hands by treating different contractual counter-parties differently for sound economic reasons. (There is no allegation that FirstMerit used some impermissible criterion, such as race, in deciding which loans to extend or renew.) In fact, the law holds otherwise. *See Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 709 (7th Cir. 2002) (rejecting an unclean hands defense where property sellers exercised their contractual right to terminate a purchase agreement with the prospective buyer, and deeming it "legally irrelevant" whether the termination was motivated by the sellers' desire to "pursue a better deal with another developer"); *Northern Trust Co.*, 657 N.E.2d at 1105 (holding that the bank committed no wrong by declining to renew a loan without revealing its internal decisionmaking process). If banks could not renegotiate or extend loans for *some* borrowers without obligating themselves under the unclean hands doctrine to renegotiate or extend loans for *all* borrowers, they likely would raise interest rates and/or get out of the renegotiation business altogether, to the detriment of banks and borrowers alike. *See Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d 511, 515 (7th Cir. 1999) ("Uncertainty would redound to borrowers' detriment, for in competition lenders must recover their costs, and an unavoidable cost created by legal dubiety would be passed on to borrowers in the form of higher interest rates."); *Matter of Lifschultz Fast Freight*, 132 F.3d 339, 347 (7th Cir. 1997) ("If the court incorrectly disregards a bona fide transaction, it commits a double wrong. First, the court has upset the legitimate expectations of a claimant …. The second wrong is … spawn[ing] legal uncertainty of a particular type: the risk that a court may refuse to honor an otherwise binding agreement on amorphous grounds of equity … [, of which] other investors are sure to take heed. An investor will see that a chance she might not get her money back has gone up slightly. She

will be less willing to lend … in the future; and the cost of credit will rise for all."); *Cont'l Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir. 1992) ("When the contracting parties draw up their own provisions, courts enforce them. People write things down in order to assign duties and allocate risks—functions vital to economic life yet defeated if courts prefer hypothetical bargains over real ones or use the ambiguities present in all language to frustrate the achievement of certainty."); *Kham & Nate's Shoes No. 2*, 908 F.2d at 1357 ("Parties to a contract are not each others' fiduciaries; they are not bound to treat customers with the same consideration reserved for their families. Any attempt to add an overlay of 'just cause' … to the exercise of contractual privileges would reduce commercial certainty and breed costly litigation.").

## Conclusion

For the foregoing reasons, Defendants' unclean hands affirmative defenses are stricken.


December 13, 2013                              _____
                                                        United States District Judge